SOPER v. ESPESET ET AL.

1. **Tax Sales:** LAND OFFERED WITHOUT BIDDERS FOR TWO OR MORE YEARS: SALE FOR LESS THAN ALL TAXES DUE: TERMS OF REDEMPTION. Where land liable to sale for delinquent taxes has been advertised and offered for two years or more, but passed for want of bidders, and is finally advertised and sold for less than the whole amount of taxes, interest and penalty due thereon at the time of sale, under the provisions of Chapter 79, Laws of 1876, (McClain's Statutes, p. 216,) the owner cannot redeem the same from such sale without paying the full amount of the taxes due at the time of sale, with the interest and penalty thereon. An offer to pay the amount for which the land was sold, with interest and penalties, is not sufficient to effect redemption, nor to justify the treasurer in withholding a deed from the purchaser at tax sale.

*Appeal from Emmet Circuit Court.*

WEDNESDAY, April 23.

THIS case was submitted to the circuit court upon an agreed statement of facts entered into between the plaintiff and Espeset, who is county treasurer. The question submitted to the court was, whether the plaintiff was entitled to a *mandamus*, compelling the defendant, as treasurer, to execute to the plaintiff a deed for certain real estate sold at a sale for delinquent taxes. The defendant, Anderson, on his own motion, was made a defendant, and allowed to contest the relief asked by the plaintiff. This he did by demurring, and thereby presented to the court the question whether under the facts the plaintiff was entitled to the relief asked. The demurrer was overruled, and the defendant, Anderson, electing to stand thereon, the court directed a peremptory *mandamus* to issue. The defendants appeal.

*T. W. Harrison*, for appellants.

*F. E. Allen*, *Geo. E. Clarke* and *Geo. H. Carr*, for appellee.

SEEVERS, J.—The facts as agreed are that the land in controversy was subject to taxation for the years 1873 to 1877, inclusive, and that the taxes assessed thereon remained due and unpaid at the date of the sale hereafter named; that said land had been legally advertised for sale for delinquent taxes for more than two years prior to the regular tax sale for the year 1878, and remained unsold for want of bidders; that on the twenty-first day of July, 1879, at an adjourned tax sale, begun and publicly held on the first Monday of November, 1878, the land in controversy was exposed at public sale by the county treasurer, in substantial conformity with all the requirements of chapter 79 of the Acts of the Sixteenth General Assembly, at which time and place one Collins bid ten dollars, which was the highest bid therefor; that Collins paid the amount of money aforesaid to the county treasurer, who executed to him a certificate of purchase; that the proper notice pertaining to the execution of a tax deed was personally served on the defendant, Anderson, in whose name the real estate in controversy was assessed and taxed for the year 1881, and proof of such service was filed with the county treasurer on the fifteenth day of September, 1882; that in December, 1882, Collins assigned the certificate of purchase to the plaintiff; that at the date of the tax sale the total amount of taxes, interest and costs on said land amounted to the sum of $256.36, and said property was of the actual value of $800, but encumbered with mortgages to the school fund, amounting to about $375; that Collins paid the subsequent taxes assessed on said land for the years 1878, 1879 and 1880, and in July, 1882, the defendant, Anderson, deposited with the county auditor the sum of $77.48, intending the same to be a tender of the amount of said bid and

subsequent taxes paid by the purchaser, with penalties, interest and costs, and the further sum of $2.20, costs of service of the notice of the tax deed, and said sum was sufficient for the purpose intended; that said auditor made in the register of tax sales, and at the proper place therein, the following entry: "Paid by L. G. Anderson $77.48, and a certificate of redemption demanded and refused, July 26, 1882, and $2.20 as fees for service of notice;" that thereupon the auditor issued and delivered to said Anderson the following:

"AUDITOR'S OFFICE, EMMET COUNTY,
"SWAN LAKE, IOWA, JULY 20, 1882.

"This is to certify that Lewis G. Anderson has this day paid into the office of the Auditor of Emmet County, Iowa, the sum of seventy-seven and forty-eight one hundredths dollars, for the purpose of redeeming the south-east quarter of section 36, township 98, range 33, from the tax sale of July 21, 1879, and the subsequent taxes paid by the purchaser, to-wit: June 10, 1879, $16.30; June 25, 1880, $14.02; July 11, 1881, 12.46, and penalty and interest on said sale and payments, this being the full amount of the price paid by said purchaser and the subsequent taxes paid, and penalty and interest thereon, to date.

"This amount is paid by said Lewis G. Anderson under protest.

"Witness my hand and the seal of said Emmet county, Iowa, this 26th day of July, A. D., 1882.

"FRANK DAVEY,
[SEAL.]                        "County Auditor.

"Also $2.20 as fees of sheriff for service of notice.
"FRANK DAVEY,
"County Auditor."

A copy of which was filed in the county treasurer's office July 29, 1882; that no redemption from said sale for taxes has been made or attempted other than said tender and deposit; that the land at that time was worth not less than

$1000; and that plaintiff duly demanded a deed, which the county treasurer refused to execute.

I. It will be obser 'd that the county auditor refused to issue a certificate of redemption, or to regard the tender and deposit of money as sufficient for that purpose. The certificate given Anderson states the facts, but it does not contain the statement that redemption had been made as required by section 891 of the Code. But the certificate does show that Anderson had tendered and deposited all that was due the purchaser at tax sale, and, if this was sufficient in amount to effect redemption, then the circuit court erred in granting the relief it did to the plaintiff. To this question we turn our attention.

II. The Revision, § 763, provided that when land was sold for delinquent taxes it must be sold for the amount due at the time of the sale. If any less sum was bid, it was the duty of the treasurer to disregard it, and the land remained unsold and the taxes unpaid. If sold, the same could be redeemed by paying the amount for which it was sold and the prescribed interest and penalties. Revision, § 779. These provisions were incorporated into the Code, §§ 871, 890. Under these provisions of the statute, it has been held that a sale for delinquent taxes divested the land of the lien of all prior unpaid taxes. *Preston v. Van Gorder*, 31 Iowa, 250; *Hough v. Easley*, 47 Id., 330. In 1870, an act was passed providing in substance that, when land had been offered for sale for two or more years, and had remained unsold for want of a bidder, it might be sold to the highest bidder, even though the amount bid was less than the taxes due and unpaid. The statutes then in force in relation to redemption were made applicable to such sales. Chapter 40 of the acts of the Thirteenth General Assembly. Under these provisions, the land owner could redeem from the tax sale by paying the amount of the bid (although it was less than the taxes due) and the interest and penalties due the tax purchaser. In 1876, the following act was passed:

"SECTION 1. Be it enacted by the General Assembly of the State of Iowa, That it shall be the duty of the several county treasurers of this state, on the first Monday of October *in each year*, or at any adjourned sale thereafter, to offer and sell at public sale to the highest bidder therefor all lands and town lots which then remain liable to sale for delinquent taxes, and which have heretofore been advertised and offered at public sale, and passed for want of bidders for two or more years, by giving general notice of such sale for six weeks previous thereto in the official papers of each of their respective counties, which said notice shall refer to and embrace the general provisions of this act; *and in case of redemption of any real estate sold under the provisions of this act, the purchaser shall only receive the amount paid and a pro rata proportion of the penalty, interest and cost.*

"SEC. 2. That in ascertaining the interest and penalties to be paid upon the redemption of such real estate from such sale, the sum *due on* any piece or parcel of real estate sold under and by virtue of the provisions of this act shall be taken to be the full amount of taxes, interest and costs due on such parcel at the time of such sale, and all the provisions of the revenue laws of Iowa, not inconsistent with this act, shall apply to such sale, and to the redemption of any real estate sold by virtue of this act; and the amount so paid for any parcel of real estate shall be apportioned *pro rata* among the different funds to which it belongs.

"SEC. 3. The amount of taxes due on any real estate sold under the provisions of this act, in excess of the amount for which the same was sold, shall be credited as unavailable tax to the county treasurer by the county auditor, apportioning the amount among the different funds to which the same belongs. The amount of such excess due to funds belonging to the state shall be reported by the county auditor to the auditor of state as unavailable, who shall give the county credit for the same." McClain's Code, page 216.

This act is precisely like that of 1870, except as otherwise

indicated by the use of italicized words. The difference between these statutes as to redemption is clear and marked. Under the act of 1876, the amount *due* on the real estate at the time of the sale, in case of redemption, must be regarded as the full amount of taxes, interest and costs, and the existing laws relating to redemption are made applicable. No matter how much less than the amount due the land was sold for, in order to redeem there must be paid the amount due at the sale, including penalties, interest and costs which accrued up to that time. It seems to us there is no escape from this construction.

This view is strengthened by the provision in relation to the amount or *pro rata* proportion of the interest and penalties the purchaser is to recieve in case redemption is made. The intent of the legislature seems to have been that a person should not be allowed to redeem from tax sale unless he paid the amount *due* at the time of the sale, and that, if such redemption was not made, the purchaser should obtain a tax title to the real estate sold.

We are not called on to vindicate the statute, but it is probable that the thought was, if land had been offered for sale and remained unsold for two years, that in order to get some part of the revenue it should be sold to the highest bidder, and that it was unjust to the other tax-payers to allow redemption to be made for any less sum than the amount due at the time of the sale. It can be readily seen that, under the law of 1870, it was the interest of the tax-payer to decline to pay his taxes, and take his chances that no one would bid the amount due, and thus, in case it was sold to the highest bidder, he could redeem for less than the amount due at the tax sale.

It is true, there was tendered to the tax purchaser all that was due him, or at least this will be conceded, yet no redemption was made, simply because the law provides that the tender and payment of that sum is not sufficient. It no doubt was the intent of the statute to provide against a com-

bination between the purchaser and owner, by which the state would or could be deprived of revenue to which it was justly entitled. Counsel for appellant insists that the sale divested the tax lien for all taxes remaining unpaid, and the cases above cited are relied on to support this position; but these cases are not applicable, because they were made under statutes materially different.

We are unable to see that the third section of the act of 1876 in any degree aids the claim made by the appellants. It has no bearing on the question of redemption, and the object of the section is plainly indicated, as it seems to us, on its face; and that is to enable the treasurer to get the proper credit and readily adjust his accounts.

AFFIRMED.