OLE EVERSON, Appellant, v. THE COUNTY OF WOODBURY, N. JENNESS, County Auditor, J. A. MAGOUN, County Treasurer, and JOHN McDONALD.

**Taxes:** POWER OF SUPERVISORS TO REMIT. A board of supervisors has no power to remit any tax legally assessed and its authority in this respect is governed by sections 1417 and 1446 of the Code.

**Redemption:** AUDITOR TO DETERMINE THE AMOUNT NECESSARY. It is the duty of the auditor to determine the amount necessary to redeem from a tax sale, and he is limited by Code, sections 1436-1439 to the full amount of taxes legally due.

**Same:** PAYMENT OF LESS THAN FULL AMOUNT DUE WILL NOT EFFECT REDEMPTION. The acceptance of less than the full amount of the legal tax, penalty and interest, and issuance by the auditor of a redemption certificate will not effect a redemption, and a certificate holder after the expiration of the statutory period and service of proper notice will be entitled to a deed.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

MONDAY, OCTOBER 20, 1902.

A tract of land in Woodbury county had been regularly assessed for taxation, taxes levied thereon, and it offered for sale at the regular tax sale of each year from 1894 to 1898, inclusive, for taxes, interest, penalties, and costs, and, for want of bidder, remained unsold. December 4, 1899, the amount due was $1,950.75, and it was sold under the provisions of section 1425 of the Code to C. J. Lever for $130.40, and to him a certificate of sale was issued, and subsequently assigned by him to the plaintiff.

On the 27th day of April 1898, Geo. M. Pardoe, trustee, who acquired the legal title at a receiver's sale, July 17, 1896, began an action against the county, in which he asked that certain personal taxes entered against the land be canceled, and also bridge taxes, and for judgment for money paid on personal taxes in redeeming from a sale made in 1893. The county appeared and issue was joined. June 7, 1898, Pardoe, as trustee, brought another action, asking that personal taxes assessed against the owner, in 1897, be canceled, but in this no answer was filed. On the 4th day of January, 1900, John M. McDonald, who had acquired title in the meantime presented his petition to the board of supervisors praying that an order be entered permitting him to redeem from the sale of 1899 by the payment of the amount bid by Lever with interest and penalty and that all taxes etc. against the land not covered by the bid be remitted upon the dismissal of said suits against the county and payment of costs. He promised to cause the suits to be dismissed and costs to be paid. Mc. Donald paid to the county auditor $143.65, by whom a certificate of redemption was issued, duly indorsed by the treasurer. The land is worth $500, and the lumber on it $200. The relief sought is that the order of the board of supervisors be set aside and held for naught; that the certificate of redemption be declared illegal and canceled; and that McDonald be restrained from clouding the title under the pretended redemption. The plaintiff's petition was dismissed, and he appeals.—*Reversed.*

*Lewis & Lewis* for appellant.

*Strong & Whitney* and *Edmund Pendleton* for appellees.

LADD C. J.—The tract of land had been offered at tax sale for five successive years without bidders, and on December

4, 1899, was sold at what is commonly designated a
1. TAXES: re- "scavenger's sale" for one-fifteenth of the
missions:
power of      amount then due, and a certificate issued which
county offi-
cials.        is now held by the plaintiff.    In consideration
of the dismissal of two actions against the county and pay-
ment of costs, the board of supervisors ordered that the
then title holder be permitted to redeem from the sale by
paying the amount bid, with interest and penalties, and
that all the unpaid taxes, interest, penalties, and costs be
remitted.    The consideration involved in dismissing the
suits against the county with payment of costs may be con-
ceded to be such as to justify the action of the supervisors
if the board had any authority to act in such a case.    In
construing a statute from which section 1437 of the Code
was copied, this court in *Soper v. Espeset*, 63 Iowa, 326,
decided that, to redeem from such a sale, all the taxes,
penalties, interest, and costs must be paid to the auditor.
Of this, however, the purchaser receives but the amount
by him bid, with his ratable part of the statutory accumu-
lations, and the balance is "apportioned ratably among the
several funds to which it belongs."    Prior to 1870 redemp-
tion could be made by paying the amount bid at the sale,
with usual additions, and in the above case it is said with
respect to the change:    "It can be readily seen that, un-
der the law of 1870, it was the interest of the taxpayer to
decline to pay his taxes, and take his chances that no one
would bid the amount due, and thus, in case it was sold to
the highest bidder, he could redeem for less than the
amount due at the tax sale.    *   *   *    It no doubt was the
intent of the statute to provide against a combination be-
tween the purchaser and owner by which the state would
or could be deprived of revenue to which it was justly
entitled."

The construction given certainly tends to prevent the
combination suggested. · But was it the legislature's in-
tention to leave the door open so that the nontaxpayer

might profit through the leniency of the board of super-
visors? There is no evidence in the record tending to show
that any of the taxes were illegal. Those involved in the
actions by Pardoe as trustee may have been, but aside
from these the validity of the taxes levied on the real es-
tate, other than the bridge tax, in 1894 and 1895, amount-
ing to $681.68, is nowhere questioned, nor is that of the
three following years. As to all the taxes not in contro-
versy in those actions, the board of supervisors had no
authority to act. It could no more deal with them than
any other taxes payable to the proper officers of the county.
The powers of the board with respect to the collection of
taxes are clearly defined by the Code. Section 1417 reads:
"The board of supervisors shall direct the treasurer to
refund to the taxpayer any tax or portion thereof found to
have been erroneously or illegally exacted or paid, with
all interest and costs actually paid thereon." Section
1446: "When by mistake or wrongful act of the treasurer
land has been sold on which no tax was due at the time or
when land is sold in consequence of error in describing it
in the tax receipt, the county shall hold the purchaser
harmless," by refunding that to which he is entitled.

These are the only provisions with respect to its inter-
vention. Even these are limited to the matter of refund-
ing taxes improperly exacted, and, in granting them, other

2. REDEMP-
TIONS: aud-
itor to deter-
mine amount
necessary.

powers in relation thereto are by necessary
implication denied. Section 1446 can have no
application, as some taxes were due, and the
description was correct. Section 1417 does not relate in
any way to valid taxes justly due. Hence if it were to be
conceded that, instead of allowing decrees in Pardoe's ac-
ions against the county and then requiring him or his gran-
tee, McDonald, to redeem and ask for the refunding of the
taxes decreed illegal, an agreement might be entered
whereby he might redeem without paying the illegal taxes,
those which were valid still remained, and the board was

utterly without authority to remit, refund, or to interfere with their collection in any manner whatever. Complete authority with respect to redemption is conferred on the county auditor and treasurer, and the statutes point out precisely how this shall be accomplished. Sections 1436, 1437, 1438, 1439, Code. It is the duty of the auditor, and not the board of supervisors, to pass upon the sufficiency of the amount tendered. Nothing less than full payment of the taxes legally due will suffice, and only by following the mode prescribed can redemption be effected. *Reeves v. Bremer County*, 73 Iowa, 166; 2 Blackwell, Tax Titles, section 719 *et seq*.

As the validity of taxes to the amount of over $1,000 was not questioned in any way, the sum paid was inadequate. The levy is for the several funds into which 3. PAYMENT of less than amount will not effect redemption. the public revenues are separated, and surely money raised for the benefit of some of these, such as for school purposes, may not be diverted therefrom to the discharge of expenses of, or the settlement of, county litigation. In the first action by Pardoe as trustee, recovery was sought for personal and bridge taxes levied prior to 1894. In event of payment either before or after judgment, the money must have been taken from the ordinary county revenues, and not from the several funds into which taxes are distributed. There is no provision under which the board of supervisors may withdraw moneys from taxes collected in pursuance of local assessments for school, town, or other purposes to replace those which must be refunded because of having been illegally exacted. The officers who may draw the different funds are specifically named. Moreover, the very purposes for which the funds shall be used are stated. Hence the amount alleged in the petition to have been illegally exacted could not in any event be offset against that which plaintiff was under legal obligations to pay, in order to effect redemption, as might possibly be permissible could

the money paid in be taken to satisfy a judgment which might be recovered. Again, the taxes whose validity is unquestioned seem to exceed the amount demanded in the action against the county by more than the sum actually paid to redeem under the order of the board. In any phase of the case, then, enough was not paid to cover the amount required to effect redemption. True, the board may act, as contended for the county in the absence of any other provision; but this is not such a case. As said, the duty of determining sufficiency of the amount necessary to redeem devolved upon the auditor. He had no authority to accept less than the taxes legally due, with penalties, interest, and cost. If less was paid, through no mistake of fact, redemption failed, and the certificate holder, after the expiration of the statutory period and the service of proper notice, will be entitled to a deed. In entering the order the board went beyond its proper sphere of influence, and acted without authority, as did also the auditor in issuing, and the treasurer in indorsing, the certificate of redemption.—REVERSED.