FRANKLIN BEARSE & others *vs.* FREDERICK P. PERRY.

Barnstable.   Jan. 26. — Feb. 26, 1875.   AMES & ENDICOTT, JJ., absent.

Prior to the passage of the St. of 1866, *c.* 206, allowing the owner of land, appro-
priated to the cultivation of the cranberry, to erect and maintain a dam across any
stream not navigable, the plaintiff built a dam at the outlet of a pond to flow his
cranberry bog. The defendant afterwards, in 1861, dug a ditch on his own land
and diverted the water of the pond, but such ditch would not have diverted any
water had not the plaintiff's dam been built.   *Held,* that, in the absence of any
evidence of a prescriptive right to maintain the dam, an action for such diversion
would not lie.   *Held, also,* that a statement, in a report made in 1874, that the dam
was built a little more than thirty years ago, could not be taken to establish affirm-
atively the maintenance of the dam for twenty years prior to 1861.

TORT for the diversion of the water of a pond in Barnstable
from the plaintiffs' cranberry bog.

At the trial in the Superior Court, at April term 1874, before
*Putnam,* J., there was evidence tending to show that the pond
covered an area of seven acres, and had its natural outlet by a
herring brook running at a right angle with the pond westerly
into Chequocquet River. The plaintiffs' land lay southerly of
the pond, and it was in controversy whether his land extended to
the north bank of the brook. The evidence on this point is
omitted as immaterial under the decision of the court.

About thirteen years ago the plaintiffs' grantor caused a ditch
to be dug from the southerly end of the pond straight to the sea,
and thus diverted the water from the herring brook, without the
consent of the defendant or his grantors. This ditch the plain-
tiffs have kept open and maintained ever since to flow their cran-
berry bog. " The flume at which the plaintiffs controlled and
raised the water above its ordinary height at their end of the
pond, for the purpose of flowing their cranberry bog, was put in
a little more than thirty years ago " by the plaintiffs' grantor.

The defendant put in evidence of his title to a tract of land on
the west side of the pond which extended eastward to the middle
of the pond, and on the south to the herring brook above named,
and included the land through which is the drain, of which the
plaintiffs complain, and the defendant's cranberry bog.

The acts of the defendant complained of, consisted in making
a drain or passage of water, in 1861, from the north end of the

pond by digging through his upland to the depth of ten or twelve feet, and putting in a trough through which water was taken from the pond to a cranberry bog of the defendant about seventy rods distant from the pond, for the purpose of flowing that bog. No water would flow through this drain unless the water in the pond was raised to more than its ordinary height.

The case was, before verdict, by consent of the parties, reported for the consideration of this court, and was to stand for trial, if upon these facts the plaintiffs could maintain their action; otherwise, judgment to be entered for the defendant.

*G. Marston,* (*H. P. Harriman* with him,) for the plaintiffs.

*G. A. King,* for the defendant.

WELLS, J. The ditch, of which the plaintiffs complain, was dug by the defendant, upon his own land, in 1861. The report states that no water would flow through it " unless the water in the pond was raised to more than its ordinary height." At that time the plaintiffs had raised the water of the pond to more than its ordinary height by means of their dam and flume at the natural outlet. But, as the dam was not raised for working a mill, they had no authority by statute for so maintaining it ; and they had acquired no right by length of user. The statement of the report that it " was put in a little more than thirty years ago," cannot be taken to establish affirmatively its maintenance for twenty years prior to 1861. There was no interference, therefore, with any legal right of the plaintiffs. The defendant did nothing which would divert the water from its accustomed flow, or withdraw it from the banks which contained it in its ordinary and natural condition. He was not bound to maintain embankments to hold the water which the plaintiffs undertook, without right, to accumulate in the pond by the construction of their dam ; nor to abstain from excavations or other changes upon the surface of his own soil, which would not affect the stream or the pond in their natural condition. *Storm* v. *Manchaug Co.* 13 Allen, 10. Even if he did it for the purpose of withdrawing a portion of the water which was kept back and raised by the dam, the plaintiffs could make out no cause of action against him. The water itself was of common right. Neither of them could claim any exclusive title. The plaintiffs' only right was the natural one to have the water flow as it had been accustomed to flow

But for their own wrongful detention of the water, the defendant's act would not have caused any diversion. It was the plaintiffs' dam that threw the water into the defendant's ditch.

The St. of 1866, *c.* 206,* gave the plaintiffs authority to maintain their dam. But it imposed no duty upon the defendant to furnish suitable embankments, or to restore the surface of his land by filling up his ditch so as to retain the water in the pond to its artificial height. Neither would the maintenance of the dam since 1861 perfect the right of the plaintiffs so to maintain it, as against the defendant's mode of using his own land in the mean time.

As the action must fail upon this ground, we need not consider the question of boundary by the stream below, or of the respective rights of the parties therein.

*Judgment for the defendant.*

* "Any person who is the owner or lessee of a tract of land appropriated to the cultivation and growth of the cranberry, may erect and maintain a dam upon and across any stream not navigable, for the purpose of flowing and irrigating said land, upon the terms and conditions, and subject to the regulations, contained in chapter one hundred and forty-nine of the General Statutes; and the provisions in said chapter relating to mills and the flowage of lands shall apply to the respective parties under this act, so far as the same are properly applicable in such cases."