GEORGE H. TURNER & another *vs.* FRANCIS A. NYE.

Barnstable.    March 23, 1891. — November 11, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Constitutional Law — Private Fishery.*

The St. of 1889, c. 383, authorizing the flowage of lands or flats in Barnstable County, upon certain terms and conditions, for the purpose of creating or raising a pond for the culture of useful fishes, is constitutional. FIELD, C. J., dissenting.

The owner or lessee of land in Barnstable County, who flows his own lands and those of others by means of a dam built and maintained for the purpose of creating a pond for the culture of useful fishes, and who keeps such pond well stocked with trout, is within the St. of 1889, c. 283, although his sole object is to increase his own personal pleasure, profit, and advantage, and not to benefit the public.

BILL IN EQUITY, filed in the Superior Court on September 5, 1889, to prevent the defendant from maintaining a dam across a creek flowing into Cataumet Harbor in Falmouth, in the county of Barnstable, and from flowing the plaintiffs' land. Hearing before *Mason*, J., who ordered the bill to be dismissed,

and, after an appeal had been taken by the plaintiffs to this court, made the following report of the facts.

The plaintiffs were the owners of about three fourths of an acre of marsh land adjoining the creek above referred to; and the defendant had built the dam across the creek in question, under the provisions of the St. of 1889, c. 383,* and by the license of the board of harbor and land commissioners, so as to flow about sixty acres of his own land and that of the plaintiffs, so that they were deprived of the use of it. The dam was partially constructed, and the plaintiffs' land appreciably flowed, but no substantial damage was done before the passage of that statute.

This dam was erected and is maintained for the purpose of creating and raising a pond for the culture of useful fishes, and the pond raised by the dam is well stocked with trout. The immediate purpose or intention of the defendant and those interested with him was not to perform a public service, but to engage in the culture of useful fishes for their own personal pleasure and profit, and the pleasure and profit of particular persons to whom they should sell rights to fish in the pond. It was not their purpose to supply the market with such fishes, nor to supply them to the public by any means, direct or indirect. The land of the plaintiffs had small market value for any use to which it could be applied other than that for which it is now used by means of the defendant's dam. There was at the time of the passage of the act, and is now, much land in Barnstable County similarly situated, having small market value for any

---

* This statute, entitled "An act to authorize the flowage of land for the purposes of fish culture," was approved on May 28, 1889, and is as follows : " Any owner or lessee of lands or flats situated in the county of Barnstable, appropriated or which he desires to appropriate to the culture of useful fishes, may erect and maintain a dam across any stream for the purpose of creating or raising a pond for such fish culture, upon the terms and conditions and subject to the regulations contained in chapter one hundred and ninety of the Public Statutes, so far as the same are properly applicable in such cases : provided, however, that nothing herein contained shall authorize the erection or maintenance of a dam across any navigable stream within said county without a license obtained therefor from the board of harbor and land commissioners, in accordance with and subject to the provisions of chapter nineteen of the Public Statutes."

purpose to which it can be applied by its separate owners, which would be enhanced in value if it were shown by successful experiment that such land could be profitably used for the cultivation of useful fishes under the powers conferred by the act.

The case was argued at the bar in March, 1891, and afterwards, in September, was submitted on the briefs to all the judges.

*A. M. Goodspeed,* for the plaintiffs.

*J. M. Hall,* for the defendant.

MORTON, J.   The plaintiffs do not rely upon the fact that the dam was partially constructed by the defendant before the passage of the St. of 1889, c. 383.   The plaintiffs could not avail themselves of that fact in this suit.   If the dam is maintainable under that statute, the plaintiffs would not be entitled to its abatement although it was partly erected without right.   *Ware* v. *Regent's Canal Co.* 3 DeG. & J. 212.   And if they are entitled to damages for the technical violation of their rights, their remedy is at law.   *Washburn* v. *Miller,* 117 Mass. 376.   Nor do they rely upon the point suggested by the defendant, that the operation of the act is confined, as it clearly may be, to Barnstable County.   Cooley, Const. Lim. 390.

The plaintiffs contend that the St. of 1889, c. 383, under which the court found that the dam was completed and is maintained by the defendant, is unconstitutional, because, first, it purports to authorize the taking of private property for a use which is not public in its nature, and secondly, if the statute is constitutional, the defendant has not brought himself within it.

But in regard to the first point we think the plaintiffs misapprehend the constitutional provision which applies to the act in question.   The statute was not an exercise on the part of the Legislature of the right of eminent domain, but was enacted under the provision which gives it power to " make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, . . . so as the same be not repugnant or contrary to this Constitution, as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof, and of the subjects of the same."   Const. Mass., Part 2, c. 1, art. 4.   It is upon this provision that the mill acts have been placed finally in this State, after what appear at

times to have been somewhat conflicting views. *Boston & Roxbury Mill Co.* v. *Newman,* 12 Pick. 467. *Murdock* v. *Stickney,* 8 Cush. 113. *Hazen* v. *Essex Co.* 12 Cush. 475. *Talbot* v. *Hudson,* 16 Gray, 417. *Lowell* v. *Boston,* 111 Mass. 454. It may be doubted whether, as new legislation, they could be sustained as an exercise of the right of eminent domain. *Murdock* v. *Stickney,* 8 Cush. 113. *Lowell* v. *Boston,* 111 Mass. 454. Cooley, Const. Lim. 534. *Jordan* v. *Woodward,* 40 Maine, 317.

Upon this provision also stand the cranberry act, so called, (St. 1866, c. 206); the act in regard to draining meadows, swamps, marshes, beaches, and low lands, with its authority to commissioners to open the floodgates of a mill, or to erect a temporary dam on the lands of another person, and assess the damages upon the proprietors (Pub. Sts. c. 189; see *Wurts* v. *Hoagland,* 114 U. S. 606); the act in regard to proprietors of wharves, general fields, and lands lying in common, with the control which it gives to a certain proportion in number and interest over the property of the rest (Pub. Sts. c. 111); and the act in regard to partition, by which one cotenant may be compelled to take money instead of land, or to give up for a time the occupation and enjoyment to another. Pub. Sts. c. 178. The mill acts, and these and other like statutes, (of which various illustrations might be given,) rest upon the principle that property may be so situated or of such a character that the absolute right of the individual owner to a certain extent must yield to or be modified by corresponding rights on the part of other owners, or by what is deemed on the whole to be for the public welfare. See *Commonwealth* v. *Tewksbury,* 11 Met. 55; *Commonwealth* v. *Alger,* 7 Cush. 53; *Denham* v. *County Commissioners,* 108 Mass. 202; *Wurtz* v. *Hoagland,* 114 U. S. 606.

The provision above quoted does not authorize the Legislature to take property from one person and give it to another, nor to take private property for public uses without compensation, nor wantonly to interfere with private rights. These are always to be carefully guarded and protected. But of necessity cases will arise where there will or may be a conflict of interests in the use or disposition of property, and questions may and will come up affecting the public welfare in regard to the use which shall or shall not be permitted of certain property.

It is for the Legislature in such instances, under the power thus conferred upon it, and with due regard to private rights, to enact the necessary laws. It is for the public good that swamps and waste lands should be reclaimed and made productive. It is also for the public good that streams should be used to operate mills, to raise cranberries, and to cultivate useful fishes. If private rights appear to some extent to be invaded, that is inseparable from the nature of the use authorized, without which the streams could not be advantageously or profitably used, and compensation is provided for any injury that may be done. The character of the property and the resulting general good are deemed sufficient to justify the action of the Legislature.

It is doubtful, however, whether any property of the plaintiff is taken or any of his rights are invaded. The statute in question authorizes the erection and maintenance of a dam across any stream for the purpose of creating or raising a pond for the culture of useful fishes. It is to be erected " upon the terms and conditions and subject to the regulations contained in chapter one hundred and ninety of the Public Statutes so far as the same are properly applicable in such cases." The chapter referred to is what is known as the mill act. Under that it has been held that the right to erect and maintain a dam to raise water for working a mill does not give to the mill-owner any right in the land flowed, or take away any right from the landowner. The latter may embank his land and thus stop any flowage of it, or, if he chooses, he may collect of the mill-owner damages in gross or annually for the flowage. Until the landowner manifests his election to claim damages, he cannot be compelled by the mill-owner to submit his land to be flowed, and until then the only right which the mill-owner has as between himself and the landowner is to maintain his dam without liability to the landowner for damages in an action at law. While the landowner may protect his land from flowage, he cannot, of course, wantonly interfere with the right which the statute gives to the mill-owner to maintain his dam. *Williams* v. *Nelson*, 23 Pick. 141. *Murdock* v. *Stickney*, 8 Cush. 113. *Storm* v. *Manchaug Co.* 13 Allen, 10. *Paine* v. *Woods*, 108 Mass. 160. *Lowell* v. *Boston*, 111 Mass. 454. *Head* v. *Amoskeag Manuf. Co.* 113 U. S. 9.

There would seem to be nothing in the purpose for which the right is given to erect and maintain a dam to create a pond for the culture of useful fishes that should give to the party erecting or maintaining such a dam any greater rights over the lands flowed by it than a mill-owner would have over lands flowed by the dam maintained by him. Without anything more, we should be slow to infer from a power to maintain a dam to create a pond for the culture of useful fishes any greater rights over lands flowed than from a power to maintain a dam to raise water for working a mill.

It appears from the facts found in the present case that the defendant's dam flows about sixty acres, all of which, with the exception of about three fourths of an acre belonging to the plaintiffs, is owned by the defendant. It is also found that the land of the plaintiffs was of small market value for any other use to which it could be applied, and that there is " much land in Barnstable County similarly situated, having small market value for any purpose to which it can be applied by its separate owners, which would be enhanced in value if it were shown by successful experiment that such land could be profitably used for the cultivation of useful fishes under the powers conferred by " the act in question. In view of these facts, and for the reasons above stated, we think that the claim of the plaintiffs that the act is unconstitutional cannot be maintained. We come to this conclusion the more readily, because a contrary result would oblige us, we fear, to hold, if the question were directly presented to us, that the cranberry act, under which a large and profitable industry has grown up, was also unconstitutional. . Although several cases under that act have been before this court, no doubt as to its constitutionality seems to have been suggested. *Bearse* v. *Perry*, 117 Mass. 211. *Hinckley* v. *Nickerson*, 117 Mass. 213. *Blackwell* v. *Phinney*, 126 Mass. 458. *Howes* v. *Grush*, 131 Mass. 207.

The plaintiffs further contend, that, if the act is constitutional, the defendant has not brought himself within its scope, because it does not appear that any direct or positive benefit will be derived by the public from the defendant's acts, and because the dam has been erected and will be maintained by him wholly for his own personal pleasure, profit, and advantage. But the court

has found that "the dam was erected and is maintained for the purpose of creating and raising a pond for the culture of useful fishes, and the pond raised by the dam is well stocked with trout." This finding brings the case within the exact words of the statute. It is not necessary that it should also appear that the object of the defendant was to benefit the public. The Legislature deemed the culture of useful fishes for any purpose beneficial, and passed this statute, as it did the mill acts, for the purpose of enabling a lessee or owner of lands or flats to raise a dam across a stream so as to engage in that occupation and use the stream without the liability to constant lawsuits from persons whose lands might be flowed. No doubt the defendant's object is his own personal pleasure, profit, and advantage. But if the enterprise is successful, the public will be benefited by the introduction and building up of a new and profitable industry, and lands now of little value and not available for any other use will be made valuable. We think this contention must also be overruled.

The result is that, in the opinion of a majority of the court, the decree appealed from must be                    *Affirmed.*

FIELD, C. J. My objections to the constitutionality of the St. of 1889, c. 383, briefly stated, are as follows. The purpose of the statute is not public. Cultivating fish for one's private use no more concerns the public than cultivating corn or other articles of food. The taking for such a purpose of the land of another by overflowing it cannot be justified as an exercise of the right of eminent domain. Notwithstanding what has been said in some of our decisions, overflowing a person's land without his consent is a taking of property while the overflow continues, and is a tort which would be enjoined unless the statutes authorized it. The mill acts were originally sustained on the ground that the erection of water mills was for the public benefit, and this was strictly true of grist-mills and saw-mills, if the public had the right to have their grain ground and their logs sawed at the mills. The acts, however, extended to mills of all kinds, in most of which the interests of the public were less direct; still, the erection of water mills, when water was the only available source of power, was always of public concern

sufficient to justify the damming of streams, if compensation were paid to the persons whose lands were overflowed. Mill acts were in force long before the adoption of the Constitution, and it could not properly be held that it was the intention of that instrument to render them void. But the damming of the waters of a running stream, so that the lands of the upper proprietors are overflowed, is something more than the reasonable use of the water, which every proprietor is entitled to make, as it runs through his land, without paying any compensation to the upper or lower proprietors. It has never been supposed that the mill acts would be sustained if they contained no provision for compensation to the persons whose lands were flowed. As was said in *Isele* v. *Arlington Five Cents Savings Bank,* 135 Mass. 142, 144, " The right to flow water back upon the land of another is not the less an easement in its nature because such other may lawfully wall or dike against it. Such right on his part diminishes the extent of the easement, but does not alter its character." *Kenison* v. *Arlington,* 144 Mass. 456.

The statute in question cannot be sustained on the ground that it authorizes the improvement of property of different owners for the common benefit of the owners or for the public benefit, or on the ground that it authorizes the improvement of property which otherwise would be practically useless. It is not confined to useless or swampy lands, or to lands of any particular description. The constitutionality of the statute must be determined by its meaning, and not by the special facts of the present case. It is possible under the statute that any owner or lessee of lands or flats situated in Barnstable County for the purpose of making a fish pond for his own private use and pleasure, may overflow the greater part of the arable land in the county, with the buildings upon it. None of the precedents cited seem to me to go as far as the opinion of the court in this case, and I am compelled to think the statute unconstitutional.