# The Illinois Central Railroad Company v. Henry L. Rucker, Judge of the Cook County Court.

### APPLICATION FOR A MANDAMUS.

The Illinois Central Railroad Company have the right, under their charter, to locate their road in the waters of Lake Michigan.

The failure of the company to locate their road within the limits of a city by the first day of January, 1852, as required by their charter, does not work a forfeiture of their right to condemn lands to their use, where the assent of the city to such location was not given until after that day had elapsed.

When a county judge refuses improperly to make an order appointing appraisers to assess damages, under the act of June 22, 1852, concerning rights of way, the Supreme Court will compel him to do so by mandamus.

This was an application to the Supreme Court, in the exercise of the original jurisdiction conferred upon it by the constitution, for a mandamus, against the judge of the county court of Cook, commanding him to appoint appraisers to assess the damages which the parties hereinafter named would sustain by reason of the construction and use of the Illinois Central Railroad.  The proceedings in the cause were: 1. A notice to the

30*

county judge, that an application would be made, by the railroad company, to the Supreme Court, for a rule on the said judge, to show cause, by a certain day named in said rule, why an alternative writ of mandamus should not be awarded against him by the Supreme Court, commanding him to show cause why, &c. 2. A petition for an alternative writ of mandamus. 3. A rule to show cause, &c. 4. Service of the rule. 5. An alternative mandamus. 6. A return thereto. 7. A demurrer to the return and joinder. And 8. A peremptory mandamus. The petition and alternative writ alleged in substance, that the Illinois Central Railroad Company was a corporation under, and by virtue of the laws of Illinois, for the purpose of constructing a railroad from the terminus of the Illinois and Michigan Canal, at the town of La Salle, together with two branches; one to the city of Chicago, and the other to the city of Galena; that the said corporation had power to condemn lands for their use, &c.; that application had been made under the acts of June 22, 1852, by said corporation, to the said county judge, for an order appointing commissioners to assess the damages, &c., which the Chicago Hydraulic Company,— James H. Woodworth, Charles Walker, George Smith, James H. Collins, Isaac Cook, Luther Rossiter, J. Y. Scammon and wife, J. D. Webster and wife, and A. H. Fullerton, — might respectively sustain by reason of the construction and use of said railroad, and that said judge had denied the said order. The petition then prayed an alternative writ of mandamus, &c. By the petition and return, it appeared that the parties above named were proprietors of land in the city of Chicago, bounded by Lake Michigan; that said railroad had been located and was to be constructed in the waters of said lake, along the margin of the same, in front of the premises of the said parties, and partly over the same; that the depots, &c., of said railway were to be located in the waters of said lake, and in front of the said property. The return to the alternative writ admitted the facts above set forth, but alleged as reasons why an order appointing commissioners was refused: 1. That the said corporation had not located their road upon the premises in question within the time required by law. 2. That said corporation had no power to locate their said road in the waters of Lake Michigan; and 3, for other reasons appearing upon the face of the proceedings. Such is a general statement of the facts relating to all of the parcels of land in common. The hydraulic company was the owner of lot 6 in block 6, bounded by the lake; they were incorporated in 1836, for the purpose of supplying the inhabitants of Chicago with water, with power to extend their pipes into

the waters of the lake. The railroad was located over a portion of this lot, and the application to condemn was subject to this exception : " excepting always the privileges of the said hydraulic company, to take the water freely from the lake for the supply of the mill and hydraulic works, by pipes extended into the lake, and the railroad company in no way obstructing the flow of said water through said pipes, but extending said pipes in a substantial and proper manner for the supply of said works and mill, through the works of the said railroad company, into the lake, on the outside thereof, and maintaining the same in good repair, and constructing their own works by proper culverts, &c., so that whether said pipes are extended or not, the property, interests, and profits of the said hydraulic company shall in noway be prejudiced or affected by the works of said railroad company ; but the same remaining unimpaired to said hydraulic company."

The objections made in the county court to the appointment of commissioners by the said hydraulic company were as follows : 1. That the railroad was not located over the premises in controversy prior to January 1, 1852. 2. The railroad company have no power to condemn the rights of said hydraulic company in the manner and with the restrictions and provisions set forth in their petition. 3. That the premises in question are parcel of the harbor of Chicago, and that the works of said railroad company will encroach upon, and render hazardous the right of navigation in the waters of Lake Michigan. 4. That all of the property sought to be condemned is not required for the use of the said Illinois Central Railroad Company, but is to be used conjointly by said railroad and the Michigan Central Railroad Company, a foreign corporation having no power to acquire such rights in the State of Illinois. 5. That the said railroad company has no right to enter upon and occupy any portion of the bed of Lake Michigan, and encroach upon and interrupt in any manner the navigation of said lake. 6. That said premises are not all required for any use or purpose authorized by the charter of said company, but for the purpose of building slips, docks, wharves, basins, piers, and other appurtenances thereto, appertaining to the business of commerce and navigation. 7. The amount of land specified in said petition is not necessary for the legitimate use of said company. All of these objections, except number two, were made by the other parties, whose lands were sought to be condemned. The hydraulic company were incorporated January 18, 1836, with power to procure their supply of water from Lake Michigan. The railroad company was incorporated February 11, 1851. The road

was located by Col. Mason, the chief engineer of the company, in October, 1851. A map of the location was made by him, and approved by the directors of the company in December, 1851, but not recorded until April, 1852. The company commenced the construction of the road according to the route thus located in February, 1852. The assent of the common council of the city of Chicago to this location was not obtained by the railroad company until June 14, 1852. For the purpose of a correct understanding of the decision of the court, it may be taken for granted that the facts assumed, in the objections of the owners to the appointment of commissioners, were proved before the county court, and formed a part of the return to the alternative writ of mandamus. The clauses in the railroad charter which bear upon the facts of this case, are as follows:

1. "All grants (lands and franchises) herein contained shall cease and be void, unless said road and branches be surveyed and located, and work on the main trunk actually begun, before the first day of January, 1852."

2. "Nothing in this act contained shall authorize said corporation to make a location of their track within any city, without the consent of the common council of said city."

3. "Said corporation shall, within a reasonable time after said road and branches shall have been located, cause to be made a map and profile thereof, &c., and file the same in the office of the secretary of state, and also like maps of the parts thereof located in the different counties through which the same may pass, and cause the same to be recorded in the office for recording deeds in the county in which said parts of said road and branches shall lie."

4. The charter, after conferring power upon the company to purchase or condemn two hundred feet in width for right of way, and such lands, waters, &c., as might be necessary for their uses, then proceeds: "All such lands, waters, materials, and privileges belonging to the State, are hereby granted to said corporation for said purposes."

The charter of the city of Chicago declared the bed and waters of the lake, over and in which the railroad was located, a part of the city and harbor of Chicago, and the common council were empowered to regulate, control, and protect the same in their discretion. The act of Congress of September 20, 1850, granting land to Illinois to aid in the construction of the Illinois Central Railroad and branches, granted along with such land the right of way, not exceeding one hundred feet on each side of the said road and branches, " over and through the public lands." These lands and rights of way were conveyed

by the State to the Illinois Central Railroad Company. Sections 1 and 2 of the act of June 22, 1852, under which the railroad company sought to condemn the lands in question, are as follows, viz. : —

Section 1. That when any public road, railroad, plank road, turnpike-road, canal, or other public work shall have been located by any officer or agent of the State or of any county, or any person or corporation vested with power to take and apply private property in the construction or use of such road, canal, or other work, or for any purpose connected with the same, such as constructing bridges, dams, locks, embankments, excavations, spoil banks, turnouts, depots, engine-houses, shops, turntables, boat yards, wharves, or docks, and the right or title to property required for any such uses or purposes cannot be obtained by purchase, a petition shall be filed in the clerk's office of the circuit court of each county, through which the location aforesaid is made, setting forth by reference, the authority to construct the work, and the right to take and apply private property, and if the right of way only is desired, describing by its numbers, or other appropriate description, each lot or parcel of land over or across which such right is desired ; or if property is required for all or any of the other purposes herein specified, stating such purpose, and describing the property so required ; and in either or both cases, stating the names of all persons interested, as owners or otherwise, in the property to be affected, if known, or if not known, stating that fact, and requesting such court to cause to be ascertained the compensation to be made to each owner of, or person interested in, property required as aforesaid, and upon payment thereof to require a conveyance or release of the same, or that by an order or orders of court, the right and title be invested in the State, county, corporation, or other person in whose name or behalf the petition is filed, to be applied and used for the purposes stated in the petition.

Section 2. Upon the filing the petition aforesaid, and giving the persons interested in the property required reasonable notice thereof, and of the time and place of making the application herein provided for, the petitioner in person, or by attorney, may apply to the judge of said court, or to the judge of the county court, or either of the associate justices of the last-named court, to appoint commissioners to fix the compensation to be made to the parties interested as aforesaid, for the right of way over or across land, and for land required for any of the other purposes herein expressed, as well as to assess the damages which may result from the construction and use of the

road, canal, or other contemplated work. Upon the hearing of which application, and each of the parties notified as aforesaid, as well as those not notified who may appear, the said judge, or associate justices, shall select and appoint three disinterested freeholders of the county commissioners to fix compensation and assess damages, according to the prayer of the petition, and also fix the time and place of their first meeting. And upon notices given as aforesaid, from time to time, or the appearance of parties without notice, the same or other commissioners shall be appointed to act with reference to parties, as they are notified, or appear, as aforesaid, until action shall be had with reference to all the parties and matters named in the petition; provided, that reasonable notice of the time and place of making application for the appointment of commissioners shall be five days, and one day in addition for every twenty miles travel from the residence of the party to the place of making application.

Such is as full a statement of the law and of the facts of this case as is deemed necessary to a correct understanding of the judgment of the court. The cause was argued by

JAMES F. JOY and R. S. BLACKWELL, for the railroad. They contended, 1. That the bed of Lake Michigan belonged to the State of Illinois. 2. That the State had power partially to obstruct the navigation of the waters of the lake. 3. That the State had, by the express words of the charter, given the railroad company the authority to locate their road over the bed, and in the waters of the lake. 4. That the legislature had delegated to the railroad company the right to determine how much land their business might require, and that the courts had no right to control the action of the company in this respect. 5. That the Illinois Central Railroad Company had a right to permit the Michigan Central Railroad Company to use their track and depot grounds; that when they did so, they made the transportation of persons and property over their road, by the Michigan Central, their own business, and no one had a right to complain of such use of their franchise. 6. That if the failure of the Illinois Central Company, to locate their road within the time limited by their charter, was a cause of forfeiture, the forfeiture could not be inquired into collaterally, but only in a direct proceeding to enforce it. 7. That there was no cause of forfeiture in this case; the company were prohibited from locating their road within the corporate limits of Chicago, until they procured the assent of the common council to such location; that assent was not given until after the time limited

had expired. 8. The exception in that part of the application which relates to the hydraulic company is legal; the company are not bound to condemn their whole franchise and rights of property. The right of the hydraulic company in the lake is a mere easement in the waters, and subject to such other rights as the legislature may confer upon other corporations; they acquired by their grant no exclusive rights. 9. That a mandamus is an appropriate remedy in this case; the county judge acts ministerially in appointing commissioners. Even if he acts judicially, as no appeal or writ of error will lie, this court may exercise its supervising power over the county court by means of a mandamus.

Isaac N. Arnold, James H. Collins, and J. Y. Scammon, for the respondent, denied the propositions laid down by the attorneys of the railroad.

The following points were ruled by the court, but no reasons were assigned: —

*Per Curiam.* 1. That the relator has the right by its charter, to locate the road over the premises in question — the city of Chicago having assented.

2. The right was not forfeited by the failure to locate this portion of the road, prior to the first of January, 1852.

3. It is the duty of the defendant to appoint appraisers, according to the prayer of the petition.

A peremptory mandamus is awarded.

*Peremptory mandamus awarded.*