In the Matter of the Application of The Split Rock
Cable Road Company to Acquire Real Estate of
Charles Hughes et al.

A contemplated possible limited use by a few, and not then as a right but by way of permission or favor, is not a public use, and so is not sufficient to authorize the taking of private property against the will of the owner. Upon an application to appoint commissioners to appraise private property sought to be acquired by a corporation organized under the act of 1888 (Chap. 462, Laws of 1888), which authorizes the formation of elevated tramway corporations for the transportation of freight and the condemning of private lands for the corporate purposes, these facts appeared: The petitioner's articles of association state that it was formed for the purpose of constructing maintaining and operating an elevated tramway between two points specified, "a distance of about four miles." The map originally filed, and the only one filed, did not include the lands in question. The tramway had been built and was in operation for a distance of about three and one-half miles. One of the termini was upon the lands of a manufacturing corporation, the other upon the lands of the petitioner, near the manufactory of said corporation. The incorporators of the petitioner were stockholders, interested in said corporation, and the petitioner was organized and thus far has been operated exclusively as an instrumentality to facilitate the business of the corporation. The lands sought to be acquired were to increase the petitioner's terminal facilities at the northern terminus of its road. There is no public highway leading to this terminus. All that was claimed by the petitioner was that the surplus of the capacity of the road, after supplying the wants of said manufacturing corporation, was to be let to some one individual engaged in selling coal, to be used in transporting that article. As to whether there would be any such surplus or whether it could be availed of by the public, did not appear. It also appeared that the petitioner had lands which could be used for the purpose for which the land in question was desired, but not as conveniently. *Held,* that the use for which the land was sought to be acquired was not public, but private, and that the petitioner's application was properly denied.

Reported below, 58 Hun, 351.

(Submitted June 25, 1891; decided October 6, 1891.)

Appeal from order of the General Term of the Supreme Court in the fourth judicial department, made December 6,

1890, which reversed an order of Special Term appointing commissioners of appraisal and dismissed the proceedings.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*William G. Tracy* for appellant. The taking of private property for the purpose of an elevated tramway of this description, is a taking for a public use within the principles established by the courts of this and other states. (*B., etc., R. R. Co.* v. *Brainard,* 9 N. Y. 100; *N. F. R. R. Co.* v. *De Veaux,* 108 id. 221; Mills on Em. Domain, §§ 12, 13, 161; *B. G. Co.* v. *Richardson,* 63 Barb. 437; *O'Reilly* v. *K. V. Co.,* 32 Ind. 169; *Coster* v. *T. W. Co.,* 18 N. J. Eq. 54; *Phillips* v. *Watson,* 63 Iowa, 28; *Talbot* v. *Hudson,* 16 Gray, 417; *Harvey* v. *Thomas,* 10 Watts, 68; *Hays* v. *Risher,* 32 Penn. St. 169; *Bankhead* v. *Brown,* 25 Iowa, 540; *N. Y. C. R. R. Co.* v. *M. G. L. Co.,* 63 N. Y. 326; *Clarke* v. *Blackmar,* 47 id. 150; Laws of 1878, chap. 203.) Lands adjacent to the proposed route of an elevated tramway convenient for terminal facilities may be condemned as required for the purposes of incorporation. (*Hannibal & S. J. R. R. Co.* v. *Mader,* 49 Mo. 165; *C. B. & A. R. R. Co.* v. *Wilson,* 17 Ill. 123; *H. R. R. Co.* v. *Kip,* 46 N. Y. 546; *In re N. Y. C. & H. R. R. R. Co.,* 77 id. 248; *N. Y. C. & H. R. R. R. Co.* v. *M. G. Co.,* 63 id. 329; *In re Bushwick Ave.,* 48 Barb. 9; *Gisey* v. *C. W. & Z. R. R. Co.,* 4 Ohio St. 308.) The finding of the court, made at appellant's request, that the Split Rock Cable Company has filed no map indicating their route extended over respondent's lands, does not prevent the condemnation of the property in question. (Laws of 1888, chap. 462, § 7; Laws of 1850, chap. 140, § 22; *In re S. B. R. Co.,* 53 Hun, 161.) None of the findings of fact made by the court at the request of the appellant require the reversal of the order appealed from. (*Nobis* v. *Pollock,* 53 Hun, 441.) It was incumbent upon the petitioner to establish that the use was a public one, and that the land was required in the operation of its business, and these facts could only be established by parol proof. (*N.*

*F. W. R. Co.* v. *De Veaux*, 108 N. Y. 375.) Where the char acter of a transaction depends upon the intent of the party who performs it, such party may testify to his intention and purpose. (*Seymour* v. *Wilson*, 14 N. Y. 567; *Kenyon* v. *Luther*, 19 N. Y. S. R. 32; *Thurston* v. *Cornell*, 38 N. Y. 281; *Pritchard* v. *Hirt*, 39 Hun, 378.) The evidence given by King was sufficient to show that the road was intended for public use. (*N. W. Co.* v. *De Veaux*, 108 N. Y. 375.)

*Thomas Hogan* for respondent. It was error for the court to deny the motion to dismiss the proceedings. The act under which the appellant was incorporated imposed no public duties or obligations upon it, and consequently the public would have no right to use the petitioner's tramway. (2 R. S. 1738, § 1; Laws of 1888, chap. 467, § 1; *In re N. Y., L. & W. R. R. Co.*, 99 N. Y. 12; *B. & N. Y. R. R. Co.* v. *Brainard*, 9 id. 100; *In re Eureka*, 96 id. 41.) The petitioner corporation was not adapted to serve any public use. (*People* v. *P. D. Co.*, 11 Col. 147; *In re R. H. & L. R. R. Co.*, 110 N. Y. 119; *Scholl* v. *G. C. Co.*, 118 Ill. 427; *In re S. B. R. R. Co.*, 119 N. Y. 141.) Aside from the character of the petitioner's structure, not being a public use and not adapted for a public use, the evidence shows that it was not intended, in fact, for a public use. (Pierce on Railroads, 144; *In re D. C. Assn.*, 66 N. Y. 569; 99 id. 12.) The alleged purposes for which the appellant sought to condemn the respondents' lands were also contingent and uncertain. (*R. & S. R. R. Co.* v. *Davis*, 43 N. Y. 145; 47 N. J. L. 43, 518.) The petitioner was not entitled to condemn the lands of respondents because they filed no map, as required by the General Railroad Act. (*People ex rel.* v. *T. A. R. R. Co.*, 112 N. Y. 402; *In re A. R. E. R. Co.*, 123 id. 351; Laws of 1888, chap. 462, § 7; *In re P. B. Co.*, 108 N. Y. 483; *In re Thompson*, 57 Hun, 119; *In re B. H. W. R. R. Co.*, 10 Abb. [N. C.] 104; *In re N. Y. & B. R. R. Co.*, 62 Barb. 85.) The attempt on the part of the Solvay Process Company, under the statute and through the instru- mentality of the subordinate corporation, to take the lands of

the respondents under a pretense of a public use, was a fraud upon the respondents and upon the court, and a perversion of the purposes of the statute. (*Fanning* v. *Osborne*, 102 N. Y. 441; *N. Y. & H. R. R. Co.* v. *Kipp*, 46 id. 553.) The petitioner in this case did not establish the fact that it endeavored to purchase the property before attempting to condemn it. (*In re E. B. W. & M. Co.*, 96 N. Y. 42; *In re N. F. & W. R. Co.*, 108 id. 375.) The purpose for which they pretended to need this land is to run surface cars. This is not within the purposes of the incorporation and power to condemn lands for such purposes is not given by the statute. (112 N. Y. 396; 12 N. Y. Supp. 506, 514; *Harding* v. *Goellett*, 3 Yerg. 41; *Atty.-Gen.* v. *Eau Claire*, 37 Wis. 400; *Sadler* v. *Laughlan*, 34 Ala. 302.) The lands are not at all necessary for the Split Rock Cable Company. (*In re R. & G. H. R. Co.*, 12 N. Y. Supp. 566.) When a party seeks to condemn lands two things must be shown : First, legislative warrant for the taking; and second, when the right is challenged that it is taken for a public use. (*In re N. F. & W. R. Co.*, 108 N. Y. 375, 383; 112 id. 405; *People ex rel.* v. *Newton*, Id. 396; *In re S. B. R. R. Co.*, 119 id. 141; *Astor* v. *A. R. Co.*, 113 id. 93; *In re E. B. N. & M. Co.*, 96 id. 42; *R. R. R. Co.* v. *Davis*, 43 id. 137; *In re N. Y. & C. R. R. Co.*, 1 Hun, 496; *In re D. C. Assn.*, 66 N. Y. 569; *C. E. I. P. R. R. Co.* v. *Wiltsie*, 116 Ill. 449; 118 id. 427; *People* v. *P. D. Co.*, 11 Col. 147; *Varner* v. *Martin*, 21 N. Y. 534; 70 Penn. St. 210; 79 id. 257; 51 Cal. 269; 31 W. V. 710; *In re R. H. & L. R. R. Co.*, 110 N. Y. 119; *In re R. E. R. Co.*, 123 id. 351.)

O'Brien, J. The Split Rock Cable Road Company, a corporation organized under chapter 462 of the Laws of 1888, entitled " An act to authorize the formation of elevated tramway corporations and to regulate the same," applied by petition to the Supreme Court for authority to take for its corporate use certain lands of which the respondents are the owners. The right to take these lands was contested by the owners on several grounds, among them, that the use for which they were

required by the corporation was not public.   The Special Term granted the application and directed the appointment of com- missioners to appraise the value of the property, and this order has been reversed by the General Term.   There are some questions of minor importance, such as the omission of the petitioner to file a map, and the present necessity for acquiring the lands for any purpose that, in our view, need not be con- sidered.   The prominent question is whether the application is for the taking of private property for a public use in fact or for a purpose merely private.   The provisions of the statute under which the petitioner is incorporated, so far as they are material to the question, are as follows:

" § 1. Any number of persons, not less than thirteen, may form a company for the purpose of constructing, maintaining and operating an elevated tramway, constructed of poles, piers, wires, rods, ropes, bars or chains, for the transportation of freight in suspended buckets, cars or other receptacles for hire, and for that purpose may make and sign articles of association in which shall be stated the name of the company, the number of years the same is to continue, the places from and to which the said tramway is to be constructed, maintained and operated, and the length of said tramway as near as may be."

The particular powers which such corporation may possess and exercise are enumerated and specified in the following provisions:

" § 6. Every corporation formed under this act shall have power and authority:

" 1. To cause such examination and surveys for its proposed tramway to be made as may be necessary to the selection of the most advantageous route; and for such purpose by its officers and servants to enter upon the lands or waters of any person, but subject to responsibility for all damages which shall be done thereto.

" 2. To lay out its tramway and to construct the same as hereby provided.

" § 7. In case any company formed under this act is unable to agree for the purchase, use or lease of any real estate required

for the purposes of its incorporation, it shall have the right to acquire title in fee to the same in the manner and by the proceedings provided by law for acquiring title to lands for railroad use, by railroad corporations, under the provisions of chapter 140 of the Laws of 1850, and the several acts amending the same, supplemental thereto, so far as the same are applicable.

" § 9. Every corporation formed under this act shall have power and authority to erect and maintain all necessary and convenient buildings, stations, fixtures and machinery for the accommodation and transaction of its business."

The articles of association of the petitioner, which are acknowledged June 13, 1888, and filed June 19, 1888, state that the subscribers " have associated together as an elevated tramway corporation, to continue in existence for the period of fifty years, for the purpose of constructing, maintaining and operating an elevated tramway between Split Rock and Onondaga Lake, a distance of about four miles, both of which places are in Onondaga county."

The capital stock of the petitioner was all paid in, and in June 1889, it completed its tramway from Split Rock northerly to near the Erie canal a distance of about three and a half miles, and since then it has been in operation. The tramway consists of two elevated cables, held upon supports and parallel to each other, about ten feet apart, on which run buckets by means of a trolley or pulley, one line taking the buckets that have been filled, and the other line taking back the buckets which are empty. The location of the southern terminus of this tramway is upon the land of the petitioner, just north of the lands now desired to be taken, and is in a gorge about 90 feet lower than the Hughes land.

There is nothing in the statute under which the corporation was formed nor in the objects of the corporation as expressed in the articles of association sufficient to warrant the conclusion that the business which it is organized to carry on is public in the sense that enables it to take private property under the power of eminent domain. The Special Term, however, found

as matter of fact that the lands required by the corporation and described in the petition were for a public use, and it remains to inquire whether the General Term was right in holding, as it did, that this finding was without evidence to support it. The facts and circumstances from which the nature of the use to which the corporation proposes to apply the property sought to be condemned, are practically undisputed. The company has filed no map indicating an intention in any way to include the land in question within the boundaries of its property, a fact which, standing alone, would form a very serious obstacle to the success of the application. (*Matter of the Rochester Electric Railway Company*, 123 N. Y. 351.)

The map of its route originally filed, taken in connection with the evidence, shows that the southern terminus of the tramway is upon the land of the petitioner and near the establishment of the Solvay Process Company, a corporation engaged in a large and growing business, consisting, as is to be inferred from the evidence, in the production of soda ash. This company owns one hundred acres of land upon which are stone quarries, and this land entirely surrounds the terminus of the tramway as well as the land in question. The northern terminus of the tramway as now built is also on the lands of the Solvay Process Company at the lime-kiln of their works, about 500 feet from the Erie canal. The incorporators of the petitioner were practically all stockholders and persons interested in the Solvay Company, and it is quite apparent that the petitioner was organized and is operated as an instrumentality to facilitate the business operations of the Solvay Company. The only business that it has thus far carried on was for that company. As now constructed the limit of its carrying capacity cannot exceed 750 tons per day. It has thus far been operated practically night and day, and has succeeded in carrying for the Solvay Company 350 to 400 tons of stone a day. There is no public highway leading to the northern terminus of the road by means of which the public can obtain access for its use; that the road has thus far been entirely for the benefit of

the Solvay Company, and that its business is to be entirely subordinate in the future to the plans and interests of the same company is entirely clear. From the evidence of the president of the petitioner and other witnesses in support of the application the most that is claimed is that the surplus of the capacity of the road, after supplying the wants of the Solvay Company, is to be devoted to public use in carrying, in buckets, freight offered to it by any person, providing such freight is suitable to the buckets and the road. Whether there is to be any surplus capacity as the Solvay Company continues to expand its business, and, if so, how much, are questions which are left entirely uncertain. / From the testimony, it appears that the lands are required in order to increase the terminal facilities of the tramway company by building other tramways on the surface to facilitate the carrying of stone to the cable station, by erecting buildings for the storage of freight and for repair shops, and to furnish means of access. The company has other lands that could be used for these purposes, but it is not so convenient. The evidence does not suggest any business that the petitioner is to carry on in the future any more than in the past, beyond the carrying of stone for the Solvay Company, except, possibly, the carrying of coal. In regard to that, it is best to describe the project in the language of the president himself, who said : "We intend to make a contract with some private individual to furnish him with coal, so that he can transport it or sell it to people in that vicinity ; to establish a coal yard the same as anywhere, not that the Solvay Process Company or the cable company will establish a coal yard; some individual will have to run it, with whom we will make a contract to carry coal, and we propose to limit the contract to one individual for the present." Looking at the statute under which the petitioner was incorporated, the object of its incorporation as described in the certificate and the evidence in regard to the manner in which it has been and is to be operated and the purpose of its corporate existence, we think it is entirely clear that the use to which the petitioner is to devote the lands of the respondents is not public, but private. The

principles governing applications by corporations of this character to take private property for its corporate purposes, have
been very fully discussed and stated in a recent case in this
court. (*Matter of Niagara Falls & Whirlpool Ry. Co.*, 108
N. Y. 375.)

Under the doctrine of this and other cases, a possible limited
use by a few, and not then as a right but by way of permission
or favor, is not sufficient to authorize the taking of private
property against the will of the owner. (*Matter of Deansville Cemetery Assn.*, 66 N. Y. 569; *Matter of Eureka Basin
Warehouse & M. Co.*, 96 id. 42; *Matter of Rochester,
Hornellsville & Lack. R. Co.*, 110 id. 119; *Matter N. Y., L.
& W. Ry. Co.*, 99 id. 12.)

The order appealed from is right, and should be affirmed,
with costs.

All concur.

Order affirmed.