## THE GREAT WESTERN NATURAL GAS AND OIL COMPANY v. HAWKINS ET AL.

[No. 4,045.   Filed March 11, 1903.]

EMINENT DOMAIN.—*Condemnation Proceeding.—Practice.*—A condemna-tion proceeding is special in its nature, and while not in the strict sense an ordinary civil action, yet the provisions of the civil code as to matters of practice may be called to the aid of the special statute.   *p. 559.*

SAME.—*Condemnation for Pipe-Line Purposes.—Refusal of Court to Ap-point Appraisers.*—Where the instrument of appropriation to con-demn land for pipe-line purposes, under §§5103–5105 Burns 1901, shows on its face that the petitioner has no right to maintain the proceeding, it is not error for the court to refuse to appoint appraisers to estimate the amount of compensation to be made. *pp. 561–564.*

SAME.—*Condemnation for Pipe-Line Purposes —Natural Gas.—Public Use.*—Under §§5103–5105 Burns 1901, the power of eminent do-main can not be exercised by a gas company to establish a pipe-line unless the petition shows that the company is engaged in furnishing gas for public use.   An allegation that the real estate

sought to be condemned is necessary in the construction of its pipe-line from its wells to a certain city is not sufficient. *pp. 565–577.*

EMINENT DOMAIN.—*Natural Gas Pipe-Line.*—*Complaint.*—An instrument of appropriation asking the fee in certain lands for pipe-line purposes is fatally defective, where the statute authorizing the condemnation gives the right to acquire only an easement. *p. 577.*

From Delaware Circuit Court; *J. G. Leffler,* Judge.

Condemnation proceedings by the Great Western Natural Gas & Oil Company against Lewis M. Hawkins and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Forkner & Forkner,* for appellant.

*Rollin Warner* and *A. W. Brady,* for appellees.

ROBINSON, J.—This cause was transferred from the Supreme Court under the provisions of the act of March 12, 1901 (Acts 1901, p. 565).

Appellant filed in the office of the clerk of the Delaware Circuit Court its instrument of appropriation, averring that it is a corporation organized under the laws of Indiana for the purpose of drilling and mining for petroleum and natural gas, and otherwise acquiring gas and petroleum wells and the product thereof, and to furnish the same to its patrons for use within this State, and by manufacture to convert the same into gas for fuel and illuminating purposes, and other articles of commerce, and digging trenches and laying pipes for the purpose of conducting gas to its patrons within this State; that it gives notice of its desire and intention "to enter upon, use, hold, and appropriate the fee simple interest, subject to the rights of the public therein as a public highway, as and for a right of way for its pipe-line, of the following described lands:" A strip one rod wide off the west side of a certain quarter section "being so much of said tract not exceeding one rod in width as lies within the public highway now located thereon and abutting on the center line of said highway; that said real estate is necessary for the use of said company for its

pipe-line and connections therewith in the construction of the same from the city of Muncie north to the gas wells and territory owned by said company in the northern part of said county of Delaware;" that Lewis M. Hawkins owns the fee of the land subject to the rights of the public in the highway; that the lands are occupied by Jacob Hawkins, who claims some interest therein, and the Manufacturers Gas & Oil Company claims some interest therein, but in fact have no right, title, or interest in the land; that appellant has not agreed with the parties and is and has been unable to agree with them for the purchase of the land, or touching the damages sustained by reason of the use and appropriation of the same.

Notice having been given, and the instrument of appropriation submitted to the circuit court at a regular term, for the appointment of appraisers, appellees excepted to the instrument of appropriation, and denied the power of the court to take any further action, for the reasons, among others, that the instrument of appropriation does not show that the appropriation is desired for the purposes for which the right of eminent domain may be invoked under the statute, and that it is sought to condemn the fee simple of the real estate, and not a mere easement.

For the purposes of this opinion it is unnecessary to set out all the objections made to the application. Some of these objections tender issues of law, while others tender issues of fact. The manner of raising objections apparent upon the face of the instrument of appropriation is not uniform in all jurisdictions. The same result may be reached by different methods. Lewis, Eminent Domain (2d ed.), §389. The proceeding is in its nature a special statutory one, and while it is not, in the strict sense, an ordinary civil action, yet the provisions of the civil code as to matters of practice may be called to the aid of such statute. *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.*, 116 Ind. 578.

Upon the hearing the court refused to appoint the appraisers, and from that action of the court this appeal is prosecuted.

The statute (§5103 Burns 1901) upon which the proceeding is based provides: "That whenever any company, corporation or voluntary association incorporated under the laws of the State of Indiana, or which may hereafter be incorporated thereunder, for the purpose of drilling and mining for petroleum or natural gas, or otherwise acquiring gas or petroleum wells and the products thereof, and to furnish the same to its patrons for use within this State, and by manufacture to convert the same into gas for fuel and illuminating purposes, and other articles of commerce, shall desire to dig trenches and lay pipes for the purpose of conducting gas to its patrons within this State, or conducting gas from its wells, or wells leased by it, or from its manufactory to any point within this State, such company, · * * * shall possess" certain powers, among them the power of eminent domain.

By §5104, supra, such company, if unable to purchase real estate required for the construction of its trenches and laying of mains and connecting pipes, is given the right to acquire an easement for such purpose in and upon such land. Section 5105, supra, provides that such a proceeding shall be instituted by depositing, "with the clerk of the circuit or other court of record in the county where the line lies, a description of the rights and interests intended to be appropriated, and an easement in such land, rights and interest shall belong" to such company "for the purpose specified" upon payment or tender of payment as provided. Provision is also made that if the company and the landowner can not agree touching the damages, the company shall deliver to the owner, within the county, "a copy of such instrument of appropriation," or if the owner does not reside in the county the company shall publish in a newspaper "an advertisement reciting the substance of such

instrument of appropriation." Upon filing "such act of appropriation" and delivering a copy or making publication the court or judge thereof in vacation shall appoint appraisers to appraise the damages sustained by such appropriation, who shall report to the court, and either party may appeal therefrom as is provided in respect to railroads.

Section 5105, *supra,* follows closely the language used in §5160, *supra,* concerning proceedings to appropriate land for railroads, and proceedings in both cases are governed by the same rules. *Consumers Gas Trust Co.* v. *Huntsinger,* 12 Ind. App. 285.

The statute concerning proceedings to appropriate land for railroads,—§§5159, 5160, 5164 Burns 1901, the same being §§14, 15, 17 of an act approved May 11, 1852; and §396 of the code (§399 Burns 1901), the same being §99 of an act approved June 18, 1852; and §896 of the code of procedure, touching the writ of assessment of damages (§908 Burns 1901), the same being §697 of an act approved June 18, 1852,—are to be construed in *pari materia. Swinney* v. *Ft. Wayne, etc., R. Co.,* 59 Ind. 205; *McMahon* v. *Cincinnati, etc., R. Co.,* 5 Ind. 413.

It is first argued by appellant's counsel that the court had no jurisdiction at the stage of the proceedings involved to entertain any exceptions; that the court had no jurisdiction to act judicially, but only ministerially, and to determine in a ministerial way, upon the face of the instrument of appropriation, whether appellant was a *de facto* corporation, and whether the proceedings were regular upon their face.

The question raised is one of practice, and seems never to have been expressly settled in this State. The propriety of the exercise of the right of eminent domain is a question exclusively legislative, but the proceedings in the exercise of the right may be before such body or tribunal as the legislature may designate. Whether such a proceeding is, strictly speaking, a civil action, or a special

proceeding only *quasi* judicial in its nature, it is clear that a proceeding to condemn land is an adversary proceeding. A condition precedent to the appointment of appraisers is the delivery of a copy of the instrument of appropriation to the landowner, if a resident of the county; or if a non-resident or unknown, the publication for three weeks .in a newspaper of the substance of the instrument of appropriation. The legislature has provided that 'this notice be given the landowner at the inception of the proceedings instead of after the appraisers have been appointed and made their report. If he can not be heard to object to the proceedings until after the appraisers have been appointed and reported, there could be no reason for giving him any notice until that time. It has been held under the railroad act that "the filing of the act of appropriation and service of a copy upon the owner of the land is notice to the party of the pendency of a suit." *Ney* v. *Swinney,* 36 Ind. 454.

The power of eminent domain,—the right to appropriate the private property of a citizen to a public use without his consent,—guarded as carefully as it can be, has been characterized by the Supreme Court as a "very high and dangerous one," and that no restriction for the better protection of the property owner should be disregarded unless the very words of the statute require it. *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.,* 116 Ind. 578. It is doubtless true that these questions could be raised at a later stage of the proceedings. But the right of the corporation to maintain the proceedings at all is a question logically preliminary to the appointment of the appraisers. The power exists only by virtue of some statute. And the statute not only designates the corporation to which the power has been delegated, but it also limits the purpose for which the power can be exercised. If the corporaiton is not such as the statute designates, or if it seeks to condemn for purposes not designated in the statute, or has

failed to perform any condition precedent to the exercise of the power, it has no right to have appraisers appointed.

In *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co., supra,* it was held that an instrument of appropriation which omitted a fact in its nature jurisdictional was an insufficient foundation for subsequent proceedings, and the judgment was reversed for failure of the petition or instrument of appropriation to show an effort of the corporation seeking title to acquire it by agreement. We can see no reason for an appellate tribunal saying to a trial court that it has no power to pass upon the sufficiency of the instrument of appropriation until after the appointment and the report of the appraisers, although the same question was presented before this additional expense was incurred. A court should not be required to enter upon the question of compensation where the instrument shows upon its face that it is insufficient to invoke the statutory power. We fail to see how the condemning party can be harmed by determining these questions at the beginning of the proceedings, nor should it be heard to complain that it was prevented from summarily paying or tendering the damages assessed and entering into possession of the real estate when its very right to condemn was the chief question presented. Not only do the implied holdings in *Ney* v. *Swinney, supra,* and *Lake Shore, etc., R. Co.* v. *Cincinnati, etc. R. Co., supra,* as well as the better reasoning, support the practice above indicated, but authorities in other jurisdictions are to the effect that the right to condemn is to be determined before the appointment of appraisers to estimate the amount of compensation to be made. *In re Split Rock Cable Road Co.,* 128 N. Y. 408; *Baltimore, etc., R. Co.* v. *Pittsburg, etc., R. Co.,* 17 W. Va. 812; *Wheeling, etc., Bridge Co.* v. *Wheeling Bridge Co.,* 138 U. S. 287, 11 Sup. Ct. 301, 34 L. Ed. 967. See *In re St. Paul, etc., R. Co.,* 34 Minn. 227; *In re Split Rock Cable Road Co.,* 12 N. Y. Supp. 116; *Cin-*

*cinnati, etc., R. Co.* v. *Bay City, etc., R. Co.,* 106 Mich. 473, 64 N. W. 471.

There are cases holding that where a statute provides that the application may be to a judge, officer, or board acting in a ministerial capacity, and "such a case is made as is required by the statute," the officer or tribunal has no discretion whether or not appraisers will be appointed, but that the duty to make the appointment is imperative.    But in such cases the principle is recognized, that necessarily the officer must look to see whether such a case is presented as authorizes and requires him to act.    *Illinois, etc., R. Co.* v. *Rucker,* 14 Ill. 353; *Western Union Tel. Co.* v. *Dickson,* 30 Wis. 389; *Chicago, etc., R. Co.* v. *Wilson,* 17 Ill. 123; Lewis, Eminent Domain (2d ed.), §387.

The statute here in question provides that upon filing the act of appropriation with the clerk of the circuit or other court of record, and the delivery of the copy or making publication, "the circuit court or other court of record, or any judge thereof in vacation," shall appoint appraisers. In the case at bar the application came on for hearing by the circuit court at a regular term.    The statute permits the application to the court in a particular manner and upon certain conditions, and in such case it is said, "the court necessarily has power to determine whether the conditions exist or have been complied with, and whether the application has been made in proper form.    *    *    *    The adjudications upon such questions will be as binding as adjudications in any other cases, and the same questions cannot be again litigated between the same parties.    Where the application is to a court, the better practice clearly is that all objections which go to the right of the petitioner to maintain the proceedings should be determined before the assessment of damages is entered upon."    Lewis, Eminent Domain (2d ed.), §388.

We think the court not only had the right to inquire into the sufficiency of the instrument of appropriation prop-

erly and seasonably questioned, but that it was its duty to refuse to appoint appraisers unless it appeared upon the face of the proceedings that the particular petitioner had brought itself substantially within the terms of the statute conferring the power which it is asked to exercise.

It is first argued against the sufficiency of the petition, that it does not show that appellant seeks to appropriate the real estate for any purpose authorized by statute, nor does it show that condemnation is sought for a public use. The statute authorizes the corporation to condemn only "for the purpose of conducting gas to its patrons within this State, or conducting gas from its wells or wells leased by it, or from its manufactory to any point within this State." The only averment in the instrument of appropriation which attempts to state the purpose of condemnation is, "that said real estate is necessary for the use of said company for its pipe-line and connections therewith in the construction of the same from the city of Muncie north to the gas-wells and territory owned by said company in the northern part of said county of Delaware."

The right of eminent domain is limited, not conferred, by the Constitution. The legislature must grant the authority and prescribe the manner in which and the purpose for which it may be exercised. But this grant of authority must be within the constitutional limitation that the property sought to be taken is for some public use. And while the courts can not question the wisdom of the act of the legislature declaring the exigency or necessity for the exercise of the right, yet the courts may prevent a legislative attempt to permit the taking of private property for other than a public use. If a legislative act assumes to authorize the seizure of the property of one citizen for the benefit of another, it can not be upheld. "The right of eminent domain," said the court in *Blackman* v. *Halves,* 72 Ind. 515, "can only be invoked for the compulsory taking or the enforced appropriation of private property when some pub-

lic exigency requires the exercise of that sovereign right."
See *Water Works Co.* v. *Burkhart,* 41 Ind. 364; *Wild* v.
*Deig,* 43 Ind. 455, 13 Am. Rep. 399. Nor will the legis-
lative declaration that the use for which authority is given
to exercise the right to seize the property of the individual
is a public use make it a public use. "Whether the use
is a public one is a judicial question, and not a legislative
one." *Logan* v. *Slogsdale,* 123 Ind. 372, 8 L. R. A. 58,
citing *Town of Rensselaer* v. *Leopold,* 106 Ind. 29; *Sadler*
.v. *Langham,* 34 Ala. 311; *In re Deansville Cemetery Assn.,*
66 N. Y. 569, 23 Am. Rep. 86; *Bankhead* v. *Brown,* 25
Iowa 540; *Tyler* v. *Beacher,* 44 Vt. 648, 8 Am. Rep. 398;
*In re St. Paul, etc., R. Co.,* 34 Minn. 227; *City of Savan-
nah* v. *Hancock,* 91 Mo. 54; *Concord Railroad* v. *Greely,* 17
N. H. 47.

It must be conceded that in this State private property
can be taken only for a public use. "It is conceded
on all hands," says Judge Cooley, "that the legislature
has no power, in any case, to take the property of one indi-
vidual and pass it over to another without reference to some
use to which it is to be applied for the public benefit."
Cooley, Const. Lim. (6th ed.), 651; Lewis, Eminent Do-
main (2d ed.), §157; *Missouri Pac. R. Co.* v. *Nebraska,*
164 U. S. 403, 17 Sup. Ct. 130, 41 L. Ed. 489. It is not
controverted that the property must be taken for a public
use, but the question is, what is a public use within the
meaning of the law, and whether under our Constitution
private property may be taken for the public good or gen-
eral welfare as contradistinguished from a technical pub-
lic use. The fact that the present Constitution (Art. 1,
§21) does not contain the term "public use," and that the
Constitution of 1816 (Art. 1, §7) did contain these words,
is of no significance in view of the decisions by the Supreme
Court. Neither Constitution expressly forbids the taking of
private property for a private use, and under neither could
private property be taken except for a public use. The effect

of the two provisions differs only in that under the present Constitution the compensation must be first assessed and tendered.

In determining whether a proposed use is public, we must look not only to the character of the business to be done, but also to the proposed manner of doing it. If, the use is merely optional with the owners, or the public benefit merely incidental, it is not a public use authorizing the exercise of the power of eminent domain. There must be in the general public a right to a definite use of the property, a right which the law compels the owner to give to the general public, and which is guarded and controlled by the law. It is not enough that the general prosperity of the community is promoted. *"Public interest* and *public use* are not synonymous. The establishment of furnaces, mills and manufactories, the building of churches and hotels, and other similar enterprises, are more or less matters of public concern, and promote, in a general sense, the public welfare. But they lie without the domain of public uses for which private ownership may be displaced by compulsory proceedings." *Matter of Niagara, etc., R. Co.,* 108 N. Y. 375. "The true criterion," said the court in *Twelfth St. Market Co.* v. *Philadelphia, etc., R. Co.,* 142 Pa. St. 580, "by which to judge of the character of the use is whether the public may enjoy it by right, or only by permission. The test is, not what the corporation owning the land may choose to do, but what under the law it must do, and whether a public trust is impressed on the land." See, also, *Sholl* v. *German Coal Co.,* 118 Ill. 427, 59 Am. Rep. 379; *Matter of Eureka Basin, etc., Co.,* 96 N. Y. 42; *Railroad Co.* v. *Iron Works,* 31 W. Va. 710, 8 S. E. 453, 2 L. R. A. 680; *West River Bridge Co.* v. *Dix,* 6 How. 507, 12 L. Ed. 535; *In re Split Rock Cable Road Co.,* 128 N. Y. 408, 28 N. E. 506; *Railway Co.* v. *Petty,* 57 Ark. 359, 21 S. W. 884, 20 L. R. A. 434; *In re Rhode Island, etc., R. Co.,* 22 R. I. 457, 48 Atl. 591, 52 L. R. A.

879; *Wild* v. *Deig,* 43 Ind. 455, 461, 13 Am. Rep. 399; *In re Theresa Drainage Dist.,* 90 Wis. 301, 63 N. W. 288; *Parkersburg* v. *Brown,* 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238; *Weidenfeld* v. *Sugar Run R. Co.,* 48 Fed. 615; *Richards* v. *Wolf,* 82 Iowa 358, 47 N. W. 1044, 31 Am. St. 501; *Welton* v. *Dickson,* 38 Neb. 767, 57 N. W. 559, 22 L. R. A. 496, 41 Am. St. 771; Lewis, Eminent Domain (2d ed.), §165.

Appellant's position, as stated in its brief, is that "under the statute it is not essential that the company should furnish to the public, or any part of it, natural gas; it is sufficient if it furnishes it for its patrons for use within the State;" and it is argued that the development of natural gas and the carrying it to consumers, whether to one or many, or solely to a manufacturing mill and industry, is a public use for which the power of eminent domain might be exercised, for the reason that gas is public property, and any use or development of it would be a public use, and for the further reason that so furnishing gas would come within the principle of the mill and mine cases.

The fact that appellant is in its nature a public corporation *(State, ex rel.,* v. *Portland Nat. Gas. Co.,* 153 Ind. 483, 53 L. R. A. 413, 74 Am. St. 314), is not of itself sufficient to authorize it to exercise the power of eminent domain in order to make a profit for its own benefit. *Buckingham* v. *Smith,* 10 Ohio 288. It is true it is held *(State* v. *Ohio Oil Co.,* 150 Ind. 21, 47 L. R. A. 627; *Townsend* v. *State,* 147 Ind. 624, 37 L. R. A. 294, 62 Am. St. 477) that the "title to natural gas does not vest in any private owner until it is reduced to actual possession." But it will not do to say that because the State owned it, so far as it was subject to ownership, after it is reduced to possession its owner is entitled to any greater or different consideration than is the owner of any other species of property. Supplying such a commodity, after it has become private property, to a single consumer would be no more a public use than so

supplying any other commodity in which a person or corporation might deal.

The mill cases involve mills run by water-power, and were generally gristmills or sawmills regulated by statute and compellable to grind or saw for the public. It is true some of these acts have been sustained without regard to whether the mill was a public or a private mill. Reference is made to early cases in Massachusetts and New Jersey, and it seems the view was then entertained that in the absence of any restriction the legislature might take private property for any purpose calculated to promote the general good. But it was also held that the right to erect a dam and overflow land "is not a right to take and use the land of the proprietor above, against his will, but it is an authority to use his own land and water privilege to his own advantage and for the benefit of the community. It is a provision by law for regulating the rights of proprietors on one and the same stream, from its rise to its outlet, in the manner best calculated, on the whole, to promote and secure their common rights in it." *Bates* v. *Weymouth Iron Co.,* 8 Cush. 548; *Murdock* v. *Stickney,* 8 Cush. 113.

And in *Turner* v. *Nye,* 154 Mass. 579, 28 N. E. 1048, 14 L. R. A. 487, a bill to prevent defendant from maintaining a dam across a stream to create a pond for the culture of fish, the court said: "The statute was not an exercise on the part of the legislature of the right of eminent domain, but was enacted under the provision which gives it power to 'make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances  *   *   *   so as the same be not repugnant or contrary to this constitution, as they shall judge to be for the good and welfare of this commonwealth, and for the government and ordering thereof, and of the subjects of the same.' Const. Mass. pt. 2, ch. 1., Art. 4. It is upon this provision that the mill acts have been placed finally in this state, after what appear at times to have been somewhat

conflicting views. * * * It may be doubted whether, as new legislation, they could be sustained as an exercise of the right of eminent domain."

Counsel call especial attention to the case of *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9, 5 Sup. Ct. 441, 28 L. Ed. 889, in support of the proposition that the taking of land for water-power for running any kind of mill or machinery is a public use authorizing the exercise of the right of eminent domain. But we do not so understand the holding in that case. After a discussion of the various colonial, territorial, and state mill acts, the court by Mr. Justice Gray, says: "The question whether the erection and maintenance of mills for manufacturing purposes under a general mill act, of which any owner of land upon a stream not navigable may avail himself at will, can be upheld as a taking, by delegation, of the right of eminent domain, of private property for public use, in the constitutional sense, is so important and far-reaching, that it does not become this court to express an opinion upon it, when not required for the determination of the rights of the parties before it. We prefer to rest the decision of this case upon the ground that such a statute, considered as regulating the manner in which the rights of proprietors of lands adjacent to a stream may be asserted and enjoyed, with a due regard to the interests of all, and to the public good, is within the constitutional power of the legislature." Moreover, in another case (*Cole* v. *LaGrange,* 113 U. S. 1, 5 Sup. Ct. 416, 28 L. Ed. 896), decided on the same day, and the opinion written by the same justice, the court said: "The general grant of legislative power in the constitution of a state does not enable the legislature, in the exercise either of the right of eminent domain, or of the right of taxation, to take private property, without the owner's consent, for any but a public object. Nor can the legislature authorize counties, cities or towns to contract, for private objects, debts which must be paid by taxes. It can not,

therefore, authorize them to issue bonds to assist merchants or manufacturers, whether natural persons or corporations, in their private business." See, also, *Township of Burlington* v. *Beasley*, 94 U. S. 310, 24 L. Ed. 161; *Osborne* v. *County of Adams*, 106 U. S. 181, 1 Sup. Ct. 168, 27 L. Ed. 129; s. c. 109 U. S. 1, 3 Sup. Ct. 150, 27 L. Ed. 835; *Blair* v. *Cuming County*, 111 U. S. 363, 4 Sup. Ct. 449, 28 L. Ed. 457.

While there are in the cases conflicting views upon the construction of these early mill acts, yet it must be conceded that the reasons upon which statutes giving the right to condemn land for private mills were upheld, do not now exist. In a new country, into which emigrants were rapidly coming, without facilities for transportation, gristmills and sawmills were as necessary to the existence of a civilized community as roads and bridges. The expense and great distance made the transportation of steam machinery impracticable, and in many cases impossible. The question at that time was not so much whether watermills were given the right to flow land for some public use, as it was that the public welfare required that they have such right. It is not difficult to see that there were times and places when and where public necessity was sufficiently urgent to authorize a legislature in granting the right to flow land for a purpose which could not perhaps be termed a public use. A careful examination of these early acts, and the decisions under them, leads to the conclusion that these acts were sustained, not so much on the ground that they authorized the exercise of the right of eminent domain by private mills, as upon the ground that they provided regulations for the use of property which was necessary to the public welfare, and that, where the flowage of lands was regarded as a taking of property under the power of eminent domain, the power could be exercised only for public mills. See *Tyler* v. *Beacher*, 44 Vt. 648, 8 Am. Rep. 398; *Ryerson* v. *Brown*, 35 Mich. 333, 24 Am. Rep. 564;

*Bottoms* v. *Brewer*, 54 Ala. 288; *McCulley* v. *Cunningham*, 96 Ala. 583, 11 South. 694; *Columbus Water Works Co.* v. *Long*, 121 Ala. 245, 25 South. 702; *Loughbridge* v. *Harris*, 42 Ga. 500; *Garbutt Lumber Co.* v. *Georgia, etc., Railway*, 111 Ga. 714, 36 S. E. 942; *Harding* v. *Goodlett*, 3 Yerg. 40, 24 Am. Dec. 546; *Varner* v. *Martin*, 21 W. Va. 534; *Hay* v. *Cohoes Co.*, 3 Barb. 42; Thompson, Corporations, §5607; Lewis, Eminent Domain (2d ed.), §§180-183.

In some of the states where the taking of land for water-power for running any kind of a mill has been upheld, the later decisions seem to doubt the validity of such acts.   See *Fleming* v. *Hull*, 73 Iowa 598, 35 N. W. 673; *Jordan* v. *Woodward*, 40 Me. 317; *Attorney-General* v. *City of Eau Claire*, 37 Wis. 400; *Harding* v. *Funk*, 8 Kan. 315; *Miller* v. *Troost*, 14 Minn. 365.

It is claimed in argument that upon the authority of *Kepley* v. *Taylor*, 1 Blackf. 492, and *Hankins* v. *Lawrence*, 8 Blackf. 266, this State is committed to the doctrine that the taking of land for water-power for running any kind of mill or machinery is for a public use.

*Kepley* v. *Taylor, supra*, brought in 1818, was an action of trespass on the case for erecting a dam which caused the water to obstruct a ford.   The defendant had previously procured a writ of *ad quod damnum*, and damages had been assessed in favor of the plaintiff's grantor.   The kind of mill for which the dam was erected is not stated, but the opinion does state that the *ad quod damnum* proceedings were based upon the act of the Territorial legislature of 1807.   Ter. Stat. 1807, p. 194.   That act authorized the writ only for gristmills, and from a consideration of that act the conclusion is irresistible that it intended to make such mills public agencies.   The rates of toll are fixed, a penalty provided for excessive tolls, certain conditions imposed, such as grinding grain in turn, keeping correct sealed measures, and the like.   As is said in the opinion, "The

important advantage of mills to the inhabitants of the country in general, is too obvious to require any elucidation. * * * It has been deemed good policy, in most of the states, for public benefit, to grant certain privileges to such persons as wish to build mills, and at the same time to impose upon them certain restraints consistent with the general good." While the act does not in terms designate such mills as public mills, yet it was evidently the intention of the legislature that they should be of a public character. This conclusion is supported by the fact that by the act of December 15, 1810 (Acts 1810, p. 71), enacted prior to the decision of *Kepley* v. *Taylor, supra,* it is declared "that every water gristmill already built, or which shall hereafter be built, that hath or shall at any time grind for toll, shall be held and deemed and is hereby declared to be a public mill." And ever since the act of 1807, acts have been in force in this State giving water gristmills this public character. Acts 1817, p. 169; Acts 1818, p. 317; R. S. 1824, p. 267; R. S. 1831, p. 373; R. S. 1838, p. 415; R. S. 1843, p. 408; §§7425-7428 Burns 1901.

In *Hankins* v. *Lawrence,* 8 Blackf. 266, the Whitewater Valley Canal Company sought to condemn an acre of land adjoining a "certain lock and hydraulic power" on the canal, which acre "was and is necessary for a site for erecting and propelling by water, a gristmill, oil-mill, carding machine, and woolen factory." It was alleged that the hydraulic power had been leased by the company for a term of years, and that "because of the diversion of water from Whitewater river into the canal said mills will be of great public utility." This canal company was created by an act of the legislature approved January 20, 1842 (Local Laws 1842, pp. 37-45), and to it was given the uncompleted Whitewater canal which the State had undertaken to construct, and failed, under the general internal improvement act, approved January 27, 1836 (R. S. 1838, pp. 337-350), the canal company succeeding to the State's

rights in connection with the uncompleted canal in consideration that it would complete the canal to a certain point within five years.

We can not in this opinion set out the various provisions of the act of 1842, but it is manifest that these provisions made the canal company a *quasi* public corporation. The canal was made a public highway, with fixed and published tolls, and no other toll should be imposed for the use of the canal and "the works thereon erected," but by the consent of the State it was authorized to take whatever land was "requisite for the most economically constructing and maintaining said canal and the works connected therewith and incident necessary to the navigation of the same." The title taken under the act of 1836 was a fee, and not a mere easement, and the rights under that act were transferred to the canal company by the act of 1842. *Brookville, etc., Co.* v. *Butler,* 91 Ind. 134, 46 Am. Rep. 580. The object of the company was to complete a public work in which the State retained an interest which the company was required to protect. The work itself was one of public concern. When the nature, powers, and purpose of the canal company are taken into consideration we do not think the case authorizes us to say that private property may be taken by condemnation for all kinds of mills. See *Prather* v. *Western Union Tel. Co.,* 89 Ind. 501, 519; *Whitewater, etc., Co.* v. *Boden,* 8 Blackf. 130.

In the mine cases, a statute declaring that the mining of ores was a public use and that the right of eminent domain might be exercised therefor was upheld in *Daton Mining Co.* v. *Sewell,* 11 Nev. 394. And in Georgia it is held that land could be condemned for a ditch to conduct water for hydraulic mining (*Hand Gold Mining Co.* v. *Parker,* 59 Ga. 419), although in *Loughbridge* v. *Harris,* 42 Ga. 500, it is held that gristmills under public regulations were not a public use.

But better reasoned cases by courts of other states hold that land can not be condemned for the use of a private mining corporation. These cases are based upon the correct theory that the mining of ores is a private enterprise conducted solely for the profit of the person or corporation operating the mine, and that in the operation of mines the community at large has no concern. *Amador Queen Mining Co.* v. *Dewitt,* 73 Cal. 482, 15 Pac. 74; *Consolidated Channel Co.* v. *Central Pac. R. Co.,* 51 Cal. 269; *Twelfth St. Market Co.* v. *Philadelphia, etc., R. Co.,* 142 Pa. St. 580, 21 Atl. 902, 989; *Waddell's Appeal,* 84 Pa. St. 90; *Edgewood R. Co.'s Appeal,* 79 Pa. St. 257; *Sholl v. German Coal Co.,* 118 Ill. 427, 10 N. E. 199, 59 Am. Rep. 379; *Sall Co.* v. *Brown,* 7 W. Va. 191. See, also, *Phillips* v. *Watson,* 63 Iowa 328, 18 N. W. 659; *People, ex rel.,* v. *District Court,* 11 Colo. 147, 17 Pac. 298.

We do not understand that a pipe-line for the conveyance of gas or oil is necessarily a public use, or that it has been so held. The transportation and supply of natural gas for public consumption is a public use. *Johnston's Appeal* (Pa. St.), 7 Atl. 167. See, also, *St. Mary's Gas Co.* v. *Elk County,* 191 Pa. St. 458, 43 Atl. 321; *Ridgeway Light, etc., Co.* v. *Elk County,* 191 Pa. St. 465, 43 Atl. 323. And where a tube line for transporting oil is given the character of a highway, is for general use, and under police regulation, it is within the constitutional term "internal improvement," and upon such a company the legislature may confer authority to exercise the right of eminent domain. *West Virginia, etc., Co.* v. *Volcanic, etc., Co.,* 5 W. Va. 382.

In *Wisconsin Water Co.* v. *Winans,* 85 Wis. 26, 54 N. W. 1003, 39 Am. St. 813, 20 L. R. A. 662, appellant petitioned to condemn land to lay a pipe-line from certain springs at a distance from Milwaukee to *the limits* of the city, stating in the petition that it intended "to convey, distribute, furnish, and supply water from said springs

for drinking and sanitary purposes to the inhabitants of Milwaukee." The statute provided that for the construction and maintenance of water-works for the supply of any city or village or the inhabitants thereof with water for protection against fire or for domestic use or sanitary purposes, every corporation formed for such purpose was authorized to acquire land necessary for the construction or maintenance of such works. On the day set for hearing the petition certain landowners appeared and moved to dismiss the proceedings because of the insufficiency of the petition. It was held that no such public use was shown as would give the right of condemnation, because it did not appear that the petitioner had any legal right to enter upon or condemn land in the city, or that it had acquired the right to construct or maintain water-works, or to lay pipes therein, or to sell or dispose of the water to be conveyed by the pipe-line to the inhabitants of the city.

In the statute under consideration, the legislature evidently intended to confer the power of eminent domain upon such companies or corporations as are engaged in furnishing gas to the public. The statute uses the word patrons. Supplying gas to the public is the use for which it may take land. See *Consumers Gas Trust Co.* v. *Huntsinger,* 14 Ind. App. 156. And we think it clear that the instrument of appropriation should show such a purpose. Appellant asks to exercise an extraordinary privilege. It may be to its advantage to furnish all the gas it can produce to a single consumer. If it may ask in its instrument of appropriation that it be permitted to condemn land to lay its pipe-lines without stating the purpose for which it desires to furnish gas, it may ask to exercise the power to lay its pipes for furnishing gas to a single individual. There is no authority in the statute for saying that the public along such a line could demand and receive gas. The statute contains no such provision or regulation. After it has acquired the easement and laid its pipe-line

there is no provision in the statute requiring it to furnish gas from such line other than such as it might choose to furnish. The statute gives to such a pipe-line none of the attributes of a highway. As the instrument of appropriation fails to show that appellant is seeking to condemn the land for a public use, it is in this respect insufficient.' See Lewis, Eminent Domain (2d ed.), §353; *Cemetery Assn.* v. *Redd,* 33 W. Va. 262, 10 S. E. 405; *Evergreen Cem. Assn.* v. *Beecher,* 53 Conn. 551, 5 Atl. 353; *Wisconsin Water Co.* v. *Winans, supra; Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.,* 116 Ind. 578; *Valley R. Co.* v. *Bohm,* 34 Ohio St. 114; *Randolph* v. *Commissioners, etc.,* 8 Ill. App. 128; *McCulley* v. *Cunningham,* 96 Ala. 583, 11 South. 694.

We think the instrument of appropriation is defective also for asking the right to take the fee under a statute which gives the right to acquire only an easement. The court was asked to appoint appraisers to assess damages for the condemnation of a particular interest in the land. The statute has expressly limited the interest the corporation may acquire. If the instrument of appropriation may ask to condemn the fee, it may with equal reason ask to condemn a strip two rods wide instead of one. The court might properly refuse to grant the prayer of a petition asking more than the statute authorized. Ordinarily, a matter of this kind could be considered as having been amended, but as this is a special proceeding brought under a special statute it is no hardship on a party to require that he bring himself clearly within the terms of the statute.

Judgment affirmed.